# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mohamed Ali Hammad, V.M.D.,   :
                                : No. 120 C.D.  2015
               Petitioner     : Submitted:  August 28, 2015
                                :
              v.                   :
                                :
Bureau of Professional and    :
Occupational Affairs, State     :
Board of Veterinary Medicine,   :
                                :
              Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN            FILED:  November 17, 2015

Mohamed Ali Hammad, V.M.D. petitions for review, *pro se*, of the January 13, 2015, final order (2015 Final Order) of the State Board of Veterinary Medicine (Board) that revoked Hammad's license to practice veterinary medicine and directed him to remit a $20,000 civil penalty.  We affirm in part, reverse in part, and modify the 2015 Final Order, reducing Hammad's civil penalty to $15,000.

Hammad is licensed to practice veterinary medicine in Pennsylvania. On February 28, 2013, a hearing examiner issued a proposed adjudication and order imposing a $5,000 civil penalty on Hammad and suspending his veterinary license for

two years, with six months of the suspension active and the remainder stayed, subject to a like period of probation with specified terms and conditions. The stay, however, was conditioned on Hammad remitting the civil penalty.

On May 29, 2013, the Board issued its final order (2013 Final Order), adopting the hearing examiner's proposed adjudication and order.[1] The Board served the 2013 Final Order on Hammad by mail. Hammad failed to remit the civil penalty, and, on July 19, 2013, the Department of State (Department) requested that Hammad immediately return his veterinary license, wall certificate, and wallet card to the Board.

In August 2013, Francis Peirce, a professional conduct investigator employed by the Department's Bureau of Enforcement and Investigation,[2] was assigned to investigate Hammad. Peirce was instructed to serve Hammad with another copy of the 2013 Final Order, retrieve his licensure documents, and determine if he was still practicing veterinary medicine.

On October 25, 2013, Peirce went to Hammad's office and found it open for business with posted office hours of 8:00 a.m. to 5:00 p.m., Tuesday through Saturday. The door to Hammad's office was unlocked, and, when Peirce walked in,

---

[1] The Board determined that Hammad violated the Veterinary Medicine Practice Act (Act), Act of December 27, 1974, P.L. 995, No. 326, *as amended*, 63 P.S. §§485.1-485.33, and the Board's regulations. Specifically, the Board found that Hammad violated recordkeeping and professional conduct regulations.

[2] As a professional conduct investigator supervisor, Peirce is responsible for investigating complaints filed with various licensing boards, including the Board.

he saw Hammad standing at the reception counter. Peirce gave Hammad his name and card and explained that he was there to serve Hammad with the 2013 Final Order, collect Hammad's licensure documents, and inspect his records.

Hammad informed Peirce that he was still practicing veterinary medicine. Peirce explained to Hammad that Hammad's license was suspended and he was not permitted to practice, to which Hammad replied that he had filed an appeal and a complaint with the Pennsylvania Human Relations Commission. Hammad provided Peirce with copies of the appeal and the complaint. Peirce requested that Hammad turn over his licensure documents, and Hammad refused. Peirce provided Hammad with a copy of the Board's 2013 Final Order.

Thereafter, Peirce asked to see Hammad's appointment book and records. Hammad stated that he had no records, opened an appointment book to an undated page containing handwritten appointment times, showed it to Peirce, and told Peirce he had no appointments. Hammad did not permit Peirce to inspect the appointment book or to make copies of it. Before leaving, Peirce again told Hammad that he could not practice veterinary medicine because his license was suspended. Hammad responded that he was going to continue to practice. Peirce left the office.

In November 2013, Peirce investigated a complaint of incompetence filed against Hammad by Joe Humeas, the owner of a cat named Cambria. Humeas alleged that on August 19, 2013, he took Cambria to Hammad's office after Cambria swallowed some rope. At the visit, Hammad examined the cat, gave her some Nutri-Cal gel, and administered a shot. Hammad then dispensed some pills and the

3

remaining Nutri-Cal to Humeas. Hammad told Humeas that the rope would pass through and that Cambria would be okay. Hammad charged Humeas $148 for the visit. That same evening, Cambria's condition worsened and Humeas, fearing the cat would die, took Cambria to an emergency veterinary clinic for treatment.

On February 20, 2014, Peirce sent Hammad a letter informing him that Peirce was investigating a complaint against him. Peirce asked Hammad to contact him to set an appointment for an interview. On February 25, 2014, Hammad acknowledged receipt of the letter and requested a formal copy of the complaint and all information about the veterinarian who was supporting the complaint so that he could file a complaint with the trial court. (Peirce Letter, 2/25/14, at 1.) Hammad stated that he would set up a meeting with Peirce after he received the requested information. (*Id.*)

On April 4, 2014, the Department issued an order to show cause before the Board alleging three counts: (1) Hammad refused to permit the Board, or its duly authorized representative, to inspect his business premises; (2) Hammad failed and/or refused to permit a duly authorized Board representative to inspect and/or copy his appointment book and veterinary medical records; and (3) Hammad violated a lawful disciplinary Board order.

On May 2, 2014, Hammad filed an answer and requested a formal hearing before the Board. On May 12, 2014, the Board delegated the case to a hearing examiner, who scheduled a hearing for August 6, 2014.

4

In May 2014, Peirce went to Hammad's office to talk to him. Peirce noted that the same office hours were posted, the office was open, and the practice appeared to be operational. Peirce was greeted by a young man who went into the back office when Peirce asked if Hammad was there. Upon returning, the young man informed Peirce that Hammad had stepped out. Peirce left his card and directed the young man to ask Hammad to call him. On another date, Peirce returned to Hammad's office around 1:00 p.m. The office was locked and new business hours were posted.

On May 23, 2014, Peirce telephoned Hammad and spoke with him, explaining that he needed Hammad's records. Hammad stated that unless Peirce gave him a copy of the complaint, the name of the complainant, and the names of any veterinarians involved, Hammad would not meet or talk to Peirce.

On May 27, 2014, Hammad filed objections to the delegation of the case to a hearing examiner and requested a Board hearing. On June 2, 2014, the Board denied Hammad's objections and request. On June 11, 2014, Hammad filed objections to the denial of his request.

Subsequently, the hearing examiner held the scheduled hearing, at which Hammad did not appear. The Department presented testimony and evidence in support of the three allegations. After the hearing, the record was closed.

On September 15, 2014, the hearing examiner issued a proposed order and adjudication. On January 13, 2015, the Board issued the 2015 Final Order. The

Board found that: the 2013 Final Order was dated May 29, 2013; the 30-day appeal period expired on June 28, 2013; there was no evidence that Hammad obtained a stay or supersedeas of the suspension imposed by the 2013 Final Order or of Hammad's successful appeal of the 2013 Final Order; Hammad's license remained suspended; Hammad had received all pleadings, notices, and orders; and Hammad had filed an answer and was given the opportunity to appear at a hearing, but failed to do so.

The Board concluded that Hammad: (1) refused to permit the Board's duly authorized representative, Peirce, to inspect Hammad's business premises, subjecting him to disciplinary action under section 21(9) of the Act, 63 P.S. §485.21(9);[3] (2) refused to permit Peirce to inspect and/or copy Hammad's appointment book and veterinary medical records in violation of section 27.1(b)(1) of the Act, 63 P.S. §485.27a(b)(1),[4] subjecting him to disciplinary action under section

---

[3] Section 21(9) of the Act provides that a veterinarian's license shall be revoked or suspended, or the veterinarian disciplined for "[r]efusing to permit the board, or duly authorized representatives of the board, to inspect the business premises of the licensee." 63 P.S. §485.21(9).

[4] Section 27.1(b)(1) of the Act, added by Section 2 of the Act of December 9, 2002, P.L. 1370, provides that a veterinarian shall, upon request, immediately provide "[c]opies of all records required to be kept by a veterinarian under this section, including, but not limited to, records pertaining to diagnosis and treatment of animals and records pertaining to drugs or devices for use on animals" to the Board. Further:

> [t]he records shall also be open to inspection by the board or its authorized representatives during an inspection as part of an inspection program adopted by the board or during an investigation initiated in response to a complaint that a licensee has violated any law or regulation that constitutes grounds for disciplinary action by the board.

63 P.S. §485.27a(b)(1).

6

21(1) of the Act, 63 P.S. §485.21(1)[5]; and (3) violated the Board's 2013 Final Order, subjecting him to disciplinary action under section 5(b)(1) of the Act of July 2, 1993, P.L. 345, No. 48 (Act 48), *as amended*, 63 P.S. §2205(b)(1).[6]

By order dated January 13, 2015, the Board revoked Hammad's license to practice veterinary medicine, effective February 12, 2015, and ordered Hammad to remit a $20,000 civil penalty. Hammad appealed to this court.[7]

Initially, Hammad contends that his case was never heard despite his filing of formal requests before the Board. Specifically, Hammad asserts that he requested a hearing before the Board, not before a hearing examiner.

"The Act does not require the Board to provide a licensed veterinarian with a hearing in which the licensed veterinarian may directly address the full Board prior to the imposition of sanctions. Sections 24 and 25 of the Act, 63 P.S. §§485.24 ("Disciplinary action authorized") and 485.25 ("Procedure in disciplinary actions")."

---

[5] Section 21(1) of the Act provides that a veterinarian's license shall be revoked or suspended, or the veterinarian disciplined for "[w]ilful or repeated violations of any provisions of this act or any of the rules or regulations of the board." 63 P.S. §485.21(1).

[6] Section 5(b)(1) of Act 48 provides authority for the Board "[t]o impose discipline, including, but not limited to, a civil penalty of up to $10,000 per violation on any licensee . . . who violates a lawful disciplinary order of the board." 63 P.S. §2205(b)(1).

[7] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

*Hammad v. Bureau of Professional and Occupational Affairs*, __ A.3d at __, __ (Pa. Cmwlth., No. 2421 C.D. 2014, filed September 10, 2015), slip op. at 6.[8]

> Under the Act, when the Department takes disciplinary action against a veterinarian's license by issuing an order to show cause, the procedure that it follows is governed by the Administrative Agency Law [Act of April 28, 1978, P.L. 202, No. 53, *as amended*, 2 Pa. C.S. §§501-508] and the General Rules of Administrative Practice and Procedure [1 Pa. Code §§ 31.1-35.251]. The General Rules of Administrative Practice and Procedure . . . permit the Board to preside over a disciplinary hearing or to designate a presiding officer to hold the hearing and to issue a proposed report for the Board's review. The ultimate decision on what, if any, action to take lies with the Board.

*Id.* (footnotes omitted). Thus, the Board did not err in designating a hearing officer to conduct Hammad's hearing.

Due process requires that a petitioner "be given notice and an opportunity to be heard, as well as the opportunity to confront and cross-examine . . . witnesses." *Id.* at __, slip op. at 4 n.4. Here, the record reveals that a hearing notice was mailed to Hammad on May 15, 2014, scheduling a hearing before a hearing examiner at 9:30 a.m. on August 6, 2014. Hammad was informed of the Department's allegations and that he had a right to an attorney, a right to present evidence, a right to challenge any evidence, and a right to cross-examine witnesses at the hearing.

---

[8] In *Hammad*, this court affirmed the Board's 2013 Final Order, determining that Hammad was afforded due process of law and that the Board had followed the proper procedure in adjudicating the matter and assessing Hammad a civil penalty of $5,000. *Id.* at __, slip op. at 1.

8

Hammad failed to appear at the August 6, 2014, hearing. Hammad's failure to appear and "engage in the process he was due does not amount to an error in that process or to a violation of [Hammad's] rights." *Id.* at __, slip op. at 7. Hammad was given notice and an opportunity to be heard, but chose not to be heard. The Board did not violate Hammad's due process rights.[9]

Next, Hammad asserts that the 2015 Final Order was never authorized, consented to, or acknowledged by the Board members.[10] Hammad asserts that there were no Board meetings in January or February 2015, and, therefore, the Board could not have signed the 2015 Final Order.

The Board sets forth that a quorum of the Board met on October 17, 2014, and reviewed Hammad's entire record. At the meeting, the Board determined that the hearing examiner's findings were supported by the evidence, that the sanction was appropriate, and that the hearing examiner's proposed report should be adopted. In a public session, the Board voted unanimously to direct its counsel to draft the 2015 Final Order, consistent with the Board's discussion in the executive session. The Board met again on December 19, 2014, and considered the draft 2015 Final Order. The Board voted unanimously, in public session, to accept the draft as

---

[9] Hammad also contends that he filed a motion to discontinue the case on September 20, 2012, but the Board did not consider the filing until January 16, 2013, and never responded to the motion. However, this action began with the order to show cause filed on April 4, 2014. The 2013 Final Order is not presently before this court. Therefore, we will not address this issue.

[10] We note that Hammad also argues the same about the 2013 Final Order. However, as previously stated, the validity of the 2013 Final Order is not before this court and, therefore, we will not address it.

9

written. The 2015 Final Order, which is included in the certified record, was issued on January 13, 2015, and was signed by David R. Wolfgang, V.M.D., chairperson of the Board and Ian J. Harlow, acting commissioner for the Bureau of Professional and Occupational Affairs. Therefore, contrary to Hammad's assertion, the Board authorized the 2015 Final Order.[11]

Finally, Hammad essentially argues that the penalties assessed in the Board's 2015 Final Order were excessive. We agree in part.

Section 28(c) of the Act, 63 P.S. §485.28(c),[12] *as amended* by section 5(b) of Act 48, authorizes the Board:

> (1) To impose discipline, including, but not limited to, a civil penalty of up to $10,000 per violation on any licensee . . . who violates a lawful disciplinary order of the board.
>
> * * *
>
> (4) To levy a civil penalty of not more than $10,000 per violation on any licensee . . . who violates any provision of the applicable licensing act or board regulation.

---

[11] We note that the Board attached to its brief the minutes from the Board's December 19, 2014, public meeting, in which the Board noted that it deliberated the Hammad matter, moved to adopt the proposed final adjudication and order, and noted that the motion carried unanimously. (Board minutes, 12/19/14, at 59.) The Board's regulation at 1 Pa. Code §33.3 allows an agency to incorporate by reference any documents on file with that agency into a subsequently filed pleading, submittal, or document.

[12] Section 28(c) of the Act, 63 P.S. §485.28(c), was repealed insofar as it was inconsistent with section 5 of Act 48, 63 P.S. §2205.

63 P.S. §2205(b)(1) and (4).

Here, the Board assessed Hammad a $10,000 civil penalty for violating the Board's 2013 Final Order by continuing to practice veterinary medicine after his license was suspended. The Board also assessed a $5,000 civil penalty for Hammad's failure to permit Peirce to inspect his veterinary medical records, and a second $5,000 civil penalty for Hammad's failure to permit Peirce to inspect his business premises.

This court is not permitted to substitute its "'judgment for that of the Board and, absent a flagrant abuse of discretion, will not interfere in discretionary matters of the Board.'" *Garner v. Bureau of Professional and Occupational Affairs*, 97 A.3d 437, 444 (Pa. Cmwlth. 2014) (citation omitted). The penalties assessed by the Board are within the Board's authority. However, the $5,000 civil penalty for Hammad's failure to permit Peirce to inspect his business premises is not supported by the record. The record is devoid of any request by Peirce to inspect Hammad's business premises or the denial of any such request. Thus, we find that the Board erred in assessing this $5,000 civil penalty.

Accordingly, we affirm in part, reverse in part, and modify the 2015 Final Order, reducing Hammad's civil penalty to $15,000.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mohamed Ali Hammad, V.M.D.,    :
   : No. 120 C.D. 2015
           Petitioner    :
   :
           v.    :
   :
Bureau of Professional and    :
Occupational Affairs, State    :
Board of Veterinary Medicine,    :
   :
           Respondent    :

O R D E R

AND NOW, this 17th day of November, 2015, the January 13, 2015, final order of the State Board of Veterinary Medicine (Board) is hereby affirmed in part and reversed in part. We reverse only as to that portion of the Board's final order that imposed a $5,000 civil penalty on Mohamed Ali Hammad, V.M.D., for Hammad's failure to permit the Board to inspect his business premises. Accordingly, we modify the Board's final order to reduce the civil penalty assessed against Hammad to $15,000.

_____
ROCHELLE S. FRIEDMAN, Senior Judge